Ridgeway *et al. v.* Lanphear *et al.*

Filed Dec. 31, 1884.

---

No. 8519.

## RIDGEWAY ET AL. *v.* LANPHEAR ET AL.

WILL.—*Construction.—Intention of Testator.*—The cardinal rule in the construction of wills is to ascertain and give effect to the intention of the testator, but, when purely technical terms are used, the technical meaning must be assigned them, unless the context clearly shows that the testator employed them in a different sense.

SAME.—*Rule in Shelley's Case.*—The rule in Shelley's case is a law of property in this State, but it will not be allowed to override the manifest and clearly expressed intention of a testator; mere negative restraining words, however, will not defeat its operation.

SAME.—*Right of Testator to Assign Meaning to Words.*—A testator has a right to assign a meaning to the words employed by him, and when that meaning is fully and clearly apparent, it will control and will take from the words their usual technical signification.

SAME.—*Words "Heirs" and "Children."*—The word "heirs" may be construed to mean children, when it clearly appears that the testator intended it to have that meaning.

SAME.—A devise of real estate by a testator to his son "during his natural life, and at his death to his children, if he have any, and if he have no children, or if there be no heirs of his body, then the real estate to his other heirs of his own blood equally, and if he die leaving a wife, his said wife to have a life-estate in said real property, said estate to terminate at her death," vests in the son, unmarried and childless at the testator's death, only a life-estate.

From the Vanderburgh Circuit Court.

*J. M. Warren, P. Maier* and *G. Palmer,* for appellants.

*A. L. Robinson,* for appellees.

ELLIOTT, J.—The contest in this case is upon the construction of the clause in the will of Mabrina Lanphear, which reads thus:

" Item 3d. I devise and bequeath unto my said son DeWitt H. Lanphear all my real estate, whatsoever, including lot seventeen (17), block two (2), in the Eastern Enlargement to the city of Evansville, Indiana, during his natural life, and at his death to his children, if he have any ; and if he have no children, or if there be no heirs of his body, then the real estate to his other heirs of his own blood equally ; and if the said DeWitt H. Lanphear die leaving a wife, his said wife to have a life-estate in said real property, said estate to terminate at her death or marriage after his death, and said real estate to be vested as above described."

DeWitt H. Lanphear was unmarried and childless at the time of the testator's death.

The contention of the appellees is that the will gives to DeWitt H. Lanphear a life-estate and no more, and that if he should marry and have children, the remainder in fee would vest in them. The position of the appellants is that the will devises the fee to DeWitt H. Lanphear.

The authorities agree that the great purpose in construing wills is to ascertain and carry into effect the intention of the testator. In opposition to this fundamental principle, all technical rules give way. *Cooper* v. *Hayes,* 96 Ind. 386, *vide* opinion 395 ; *Downie* v. *Buennagel,* 94 Ind. 228 ; *South* v. *South,* 91 Ind. 221 (46 Am. R. 591). It is true that wills are to be construed by technical rules, when purely technical terms are used, and there is nothing in the language with which they are associated showing that the testator intended them to have any other meaning; but where it clearly and distinctly appears that the testator did not intend to employ the terms in their technical sense, then the courts will not give them that meaning; on the contrary, they will search for and affix to the terms employed the meaning which the testator intended they should receive.

Ridgeway *et al.* *v.* Lanphear *et al.*

The rule in *Shelley's Case*, 1 Co. 88, is the law of this State, and, in all cases where the facts make it applicable, we must enforce it, although we may think there was not much reason for it at the time of its adoption, and none at all under the existing system of tenures and conveyances. But, in accepting the rule, we take it as construed and enforced by the courts which formulated and proclaimed it. Pressed by the evils wrought by the rule, and shocked by the great number of instances in which it operated to utterly overthrow the intention of the testator, these courts, centuries ago, affirmed that there existed an important difference beween wills and deeds, and that the rule should not be so strictly enforced in the case of a will as in the case of a deed. It has long stood as the law that there is a material distinction between wills and deeds, and that the rule in *Shelley's Case* will not be allowed to override the manifest and clearly expressed intention of the testator, but that the intention will always be carried into effect if it can be ascertained. It is true that where the words used are such as bring the case within the rule, it will be given full force and effect, but where the context clearly shows that the testator annexed a different meaning, that meaning will be adopted, and the rule will not be allowed to frustrate his intention. The reason for applying a different principle to wills from that applied to deeds is given by a learned English author, who says: "In construing wills, courts have always borne in mind that a testator may not have had the same opportunity of legal advice in drawing his will as he would have had in executing a deed. And the first great maxim of construction accordingly is, that the intention of the testator ought to be observed." Williams Real Prop. (5th ed.) 212. In speaking of the course of the courts in averting the operation of the technical rule, the same author says: "But, in such cases, the courts, conscious of the pure technicality of the rule, were continually striving to avert the hardship of its effect, by laying hold of the most minute variations of phrase, as matter of exception." It is the right of a testator to assign his own meaning to the

words he employs, and where this meaning clearly appears it will overcome the technical meaning usually affixed to the words. While the use of mere negativing or limiting words can not control the force of the term " heirs," still the testator has a right to assign to it a meaning different from its technical one, and to make it mean children, grandchildren, or any kinsmen. 3 Jarman Wills, 115 ; Fearne Remainders, 188. This court has, in many cases, recognized the doctrine that there is a difference between wills and deeds, and that the rule in *Shelley's Case* is not so rigorously applied to wills.

In *Cleveland* v. *Spilman*, 25 Ind. 95, it was said : " But less strictness was required in the disposition of real estate by will, for the reason that when this mode of alienation was introduced, the rigor of feudal times was greatly worn out, and hence more liberality prevailed. * * * Upon the ground that a testator may often be without that professional assistance of which a party to a deed can always have time to avail himself, it was long ago held that the intention of the testator, as it could be collected from the whole will, more than from the exact legal import of the words employed, should be regarded. Cowp. 352."

In the early case of *Lutz* v. *Lutz*, 2 Blackf. 72, the court said, in speaking of a will : " This is not an instrument in which the intention of the maker must yield to any rigid principle of law. The intention of the testator, in such cases as the present, must prevail." The court, in *Doe* v. *Jackman*, 5 Ind. 283, while conceding, as we have done, that the rule in *Shelley's Case* is the law of Indiana, said : " But the term ' heirs' is one of limitation. It has a fixed and legal meaning, and a mere presumed intention will not control its signification. It can not be held a word of purchase, unless the testator's intent so to use it appears manifest." We have made these extracts from our cases, not for the purpose of establishing the general rule that the testator's intention must govern, but for the purpose of proving that it has long been the rule that there is a difference between deeds and wills in

Ridgeway *et al. v.* Lanphear *et al.*

respect to the operation of the rule in *Shelley's Case,* and that the rule does not apply with the same rigor to wills as to deeds.  There are many other cases in our reports where the rule in *Shelley's Case* was insisted upon, but in which the court denied its application, and held that the intention of the testator should govern. *Doe* v. *Harter,* 7 Blackf. 488 ; *Baker* v. *Riley,* 16 Ind. 479 ; *Pattison* v. *Doe,* 7 Ind. 282 ; *Jones* v. *Miller,* 13 Ind. 337 ; *Hull* v. *Beals,* 23 Ind. 25 ; *Rusing* v. *Rusing,* 25 Ind. 63 ; *Prior* v. *Quackenbush,* 29 Ind. 475 ; *McMahan* v. *Newcomer,* 82 Ind. 565: Decisions ruling in cases of deeds do not, therefore, necessarily govern in cases of wills.

The testator who executed the will which is now before us, in terms, restricts the devisee's estate to one for life. The will contains a clause declaring that Lanphear shall hold " during his natural life," and although such a clause will not control in a case where the technical words are used which carry the case within the rule in *Shelley's Case,* still it is not meaningless, for it does possess force, and does afford assistance in the work of construction. *Daniel* v. *Whartenby,* 17 Wall. 639 ; *Montgomery* v. *Montgomery,* 3 Jones & L. 47.

If it were not for the technical rule, the clause would itself be sufficient to evidence to the courts the testator's intention, but where the will contains the words which invoke the operation of the rule in *Shelley's Case,* such a clause can not, it has long been settled, break their force.  But, in this instance, there is to be added to the force of the clause the material fact that the testator uses the word " children " immediately after Lanphear's name.   This is an important fact, for the word " children " is a word of purchase and not of limitation, and when used without words adding to its force the first taker of the estate does not take the fee.  If we had nothing more than the clause quoted and the words " his children," it would be perfectly clear that only a life-estate was vested in Lanphear, but we have this provision : " And if he have no children, or if there be no heirs of his body,

then the real estate shall go to the other heirs of his own blood," and the word "heirs" or the words "heirs of his body," if not otherwise defined by the testator, would carry a fee to the first taker. The presence of these words has the effect to somewhat obscure and darken the meaning of the will, but not to control its construction. We have seen that it is the right of a testator to affix his own definition to the words he uses, and we think it plain that the testator has defined the words "heirs of his body" to mean children. The words are so used as' to clearly indicate that the testator meant them to signify the same thing as the word "children;" they are simply the repetition of the same meaning in a different form of words. If we assign to the words "heirs of my body" this meaning, we give full effect to the clause "during his natural life," to the clause "his children," and to the manifest intention of the testator as it appears from the general tenor of the whole will. In the case of *Rapp* v. *Matthias*, 35 Ind. 332, it was held that the word "heir" should be construed to mean children, where the context showed that to be the meaning the testator intended it to have. The provision in the deed in *Prior* v. *Quackenbush*, 29 Ind. 475, was, the grantor "doth give, grant, convey and confirm to the said Catherine and her heirs forever," and it was held that the word "heirs" was intended to mean children, because a subsequent part of the deed showed that this was the sense in which the grantor used the word. In the case of *Cleveland* v. *Spilman*, 25 Ind. 95, the will read, "I do also will and bequeath to my wife, Eliza Spilman, and my heir, if she should have one, equal, if not, all to her," and it was held that this provision vested in the wife and the unborn child all of the testator's real estate, because the context showed this to be the intention of the testator. An English writer says: "Upon the same principle, in the converse case, *i. e.*, where the words *heirs of the body* are explained to mean some other class of persons, the rule does not apply."

3 Jarman Wills (5 Am. ed.) 117; *Webster* v. *Cooper*, 14 How. 488; *Powell* v. *Glenn*, 21 Ala. 458, see p. 466.

The provision of the will that. if Lanphear should die leaving a widow, she should take the land for life, tends strongly to show the testator's intention to limit him to an estate for life; for, to have given him an absolute fee would have cut off all other estates.  It is not material to inquire whether the devise to the possible widow of Lanphear is or is not valid, for, if he took nothing more than a life-estate, then the decision below was correct, whether the devise to the possible widow was or not void.  If it were conceded to be void, that would not destroy its effect as evidence of the testator's intention.

Judgment affirmed.

Filed Nov. 25, 1884.  Petition for a rehearing overruled Jan. 27, 1885.