No. 11,813.

## Allen et al. *v.* Craft et al.

Will.—*Trust.—Control and Disposition.—*A devise to a trustee, with no power of control or disposition, is ineffective, and the estate vests directly in the beneficiary.

Same.—*Estate Tail.*— That which would have been an estate tail at common law is an absolute estate in fee, under the statutes of this State.

Same.—*Rule in Shelley's Case.—*A devise to M. A. " and her heirs forever," where it appears that the word "heirs" was used as a word of limitation, vests in the first taker, under the rule in Shelley's case, an estate in fee.

Same.— *Use of Word " Heirs."—Intention of Testator.—*The word " heirs " has a fixed, legal meaning, and can only be held to mean children, or to be a word of purchase, when it is clear that such was the intention of the testator.

Same.—When the word "heirs" is used as a word of limitation, it is treated as conclusively expressing the intention of the testator.

Same.—*Superadded Words.—*Superadded words which merely describe or specify the incidents of the estate created by such a word of limitation as the word "heirs," do not cut down the interest of the devisee.

Same.—*Issue.—*The word "issue" is ordinarily a word of limitation of the same force as the word "heirs."

Same.—*Estate in Fee.—Restriction Upon Right to Alienate.—*Where an estate

in fee is created, a general restriction upon the right of alienation is without effect.

HOWK, J., dissents.

From the Laporte Circuit Court.

*W. B. Biddle* and *C. H. Truesdell,* for appellants.

*M. H. Weir, E. E. Weir, J. Bradley, J. H. Bradley, D. J. Wile* and *F. E. Osborn,* for appellees.

ELLIOTT, C. J.—The second item of the will of Catharine Allen reads thus:

"*Secondly.* I devise and bequeath unto John Allen, of Xenia, in Greene county, in the State of Ohio, in trust for Mrs. Matilda Allen, the present wife of my son, Mark Allen, and her heirs forever, the following real estate, to wit: The south half of section 28, in township 36 north, of range 3 west, situate and lying and being in the county of Laporte, aforesaid. And I hereby direct that the said Matilda shall have the sole use, control, benefit and profits thereof, free and clear of and from her said husband, my son, Mark Allen, and free and clear of all interference on his part in the management thereof, the receipt of profits arising therefrom, and in all matters whatsoever during her natural life, and at and after her death, then the heirs of her body shall in all things control and manage the same and receive the rents and profits arising therefrom: *Provided,* nevertheless, that upon the death of my son, Mark, if my said daughter, Matilda, should survive him, the heirs of her body then living and in being shall thenceforward be entitled to receive two-thirds of the profits thereof, to be equally divided between them, and should the said Matilda marry again, then the heirs of her body then in being shall thenceforward manage and control the said land, still giving to my said daughter one-third of the profits during her natural life, but in no case shall the issue of my daughter, Matilda, by any marriage other than with my son, Mark, be entitled to inherit anything under or by virtue of this will, but I expressly prohibit them there-

from, and in case that my daughter, Matilda, shall survive her present husband, she shall not after his death alienate the said estate."

The designation of John Allen as trustee is ineffective, inasmuch as no power of control or disposition is vested in him. The estate, whatever its character, devised to Matilda Allen vests directly in her. This is the effect of the statute, as the trust is a mere naked one. R. S. 1843, p. 447, sec. 181; R. S. 1881, sec. 2981.

The controlling question in the case is as to the nature of the estate devised to Matilda Allen. If the estate devised is a fee, then the judgment below was right; if not, the judgment is wrong and must be reversed.

The contention of appellees' counsel, that if the estate devised would have been an estate tail at common law, it is an estate in fee simple under our statute, must prevail. R. S. 1843, 424, section 56; R. S. 1881, section 2958; *Tipton v. La Rose*, 27 Ind. 484.

There were at common law two kinds of estates tail, general and special. Blackstone thus describes the latter: " Tenant in tail special is where the gift is restrained to certain heirs of the donee's body, and does not go to all of them in general." 2 Blackstone Com. 113.

In this instance, if the estate devised is an estate tail, it is a special one, for the words of the will restrain the persons who shall take to those begotten by the son of the testatrix and the husband of the donee. The inquiry as to whether the estate tail, conceding that this is the estate created by the devise, is a special or a general one, is important only for the purpose of showing that a limitation to a designated class of heirs does not cut down the estate of the first taker to less than a fee, for the estate is a fee although the limitation may be to a designated class of heirs to the exclusion of all others. It results from this rule of law, that the limitation to the heirs of the body of Matilda Allen, begotten by Mark Allen, does not, in itself, further affect the devise than to make it

what at common law would be an estate tail special, but if it be such an estate at common law, then, by force of our stat-ute, it is an absolute estate in fee, since all estates tail are transformed into fees absolute.

What we have said disposes of the clause limiting the inheritance to the heirs begotten by Mark Allen, considered. in itself and apart from the other provisions of the will, and we proceed to analyze and discuss the other provisions of the instrument.

It is firmly established by our decisions, that the rule in Shelley's case is the law of this State. In one case the court declared and enforced this rule, but expressed the hope that it might be changed by legislation, avowing that it was not within the power of the court to change it, much as the court doubted its wisdom and justice. *Siceloff* v. *Redman,* 26 Ind.. 251, see p. 259. But the rule has been so repeatedly and emphatically declared to be a rule of property, that it is no longer a question as to its binding force upon the courts of the State. *Hochstedler* v. *Hochstedler,* 108 Ind. 506 ; *Fountain County, etc., Co.* v. *Becklehcimer,* 102 Ind. 76 (52 Am. R. 645), and auth. cited p. 77 ; *Shimer* v. *Mann,* 99 Ind. 190 (50 Am. R. 82) ; *Ridgeway* v. *Lanphear,* 99 Ind. 251 ; *Biggs* v. *McCarty,* 86 Ind. 352 (44 Am. R. 320) ; *McCray* v. *Lipp,* 35 Ind. 116 ; *Andrews* v. *Spurlin,* 35 Ind. 262 ; *Doe* v. *Jackman,* 5 Ind. 283.

The clause in the will containing the words " unto Matilda. Allen and her heirs forever," if it stood alone, would unquestionably carry the case far within the rule in Shelley's case. *Shimer,* v. *Mann, supra,* and cases cited ; *Hochstedler* v. *Hochstedler, supra.* The clause can not, however, be severed from those with which it is associated, but must be considered in conjunction with them.

We have no doubt that a clause creating an estate in fee may be so modified by other clauses as to cut down the estate to one for life, but to have this effect the modifying clauses must be as clear and decisive as that which creates the estate..

*Hochstedler* v. *Hochstedler, supra; Bailey* v. *Sanger,* 108 Ind. 264 ; *Thornhill* v. *Hall,* 2 Clark & F. 22 ; *Collins* v. *Collins,* 40 Ohio St. 353 ; *Lambe* v. *Eames,* L. R. 10 Eq. Cases, 267 ; *Clarke* v. *Leupp,* 88 N. Y. 228 ; *Roseboom* v. *Roseboom,* 81 N. Y. 356 ; *Freeman* v. *Coit,* 96 N. Y. 63.

If the other words of the will are as strong and clear as those of the clause "unto Matilda Allen and her heirs forever," then it may well be held that the estate is less than a fee. The word "heirs" is, as Mr. Preston says, the "most powerful" that can be employed, and this our cases recognize. *Shimer* v. *Mann, supra,* and cases cited. *Hochstedler* v. *Hochstedler, supra.*

Strong as is the word "heirs," it may be read to mean children, if the context decisively shows that it was employed in that sense by the testator. *Ridgeway* v. *Lanphear, supra; Shimer* v. *Mann, supra; Hadlock* v. *Gray,* 104 Ind. 596. But there must be no doubt as to the intention of the testator to affix to the word "heirs" a meaning different from that assigned it by law. *Shimer* v. *Mann, supra; Jessen* v. *Wright,* 2 Bligh (H. L. Cases), 1, 56 ; *Doe* v. *Gallini,* 5 B. & Ad. 621 ; *Lees* v. *Mosly,* 1 Y. & Coll. Exch. Cases, 589 ; *Powell* v. *Board, etc.,* 49 Pa. St. 46, 53 ; *Den* v. *Emans,* Penn. (N. J.) 967 ; *Robins* v. *Quinliven,* 79 Pa. St. 333.

It appears from these principles, that the words employed in the clause "unto Matilda Allen and her heirs" must prevail to carry a fee, unless we find equally clear and decisive terms cutting down the estate, and this is not possible unless, as said in one of the cases cited, the intent to employ the word "heirs" in a different meaning from that assigned it by law is so plain that nobody can misunderstand it. Our search then must be made with these rules as our guide.

The clause which gives to Matilda Allen the sole control of the estate during life, and after her death "then to the heirs of her body," is but a reiteration of the meaning conveyed by the clause we have already discussed, for in themselves they carry a fee, as the powerful term "heirs" is still

employed.   Proceeding with our analysis, we come to the clause, "Provided, nevertheless, that upon the death of my son, Mark, if my daughter should survive him, the heirs of her body then living shall thenceforth be entitled to receive two-thirds of the profits thereof, to be equally divided among them, but should the said Matilda marry again then the heirs of her body then in being shall thenceforward manage and control the land, still giving to my daughter one-third of the profits thereof during her natural life, but in no case shall the issue of my daughter by any marriage other than with my son, Mark, inherit anything under or by virtue of this will, but I expressly prohibit them therefrom, and in case that my daughter, Matilda, should survive her present husband, she shall not after his death alienate the said estate."

The introductory clause in which the word "heirs" occurs undoubtedly shows, if taken by itself, that the word was not used as signifying heirs in the legal sense of the word, but we can not separate this clause from the other members of the sentence, and considered, as undeniably it must be, in connection with them, it must yield.   This we say because in the clause blended with it is the word "issue," and this is ordinarily a word of limitation of the same force as the word "heirs."

In *Quackenbos* v. *Kingsland*, 102 N. Y. 128 (55 Am. R. 771), the words of the will were: "I give, devise and bequeath unto my son, Daniel Kingsland, and to his heirs; but in case my son Daniel should die without lawful issue, I give and bequeath it to my remaining children," and it was held that Daniel took an estate in fee.   The definition of the word "issue" was tersely stated by Lord ELDON in *Sibley* v. *Perry*, 7 Vesey, 522, for he said:   "Upon all the cases this word *prima facie* will take in descendants beyond immediate issue."

In *Powell* v. *Board, etc.*, 49 Pa. St. 46, it was said:   "Un-

doubtedly in a will the word 'issue' is regarded as primarily a word of limitation, and as synonymous with the technical words 'heirs of the body.' Hence it is presumed that when a testator devises an estate for life, with a remainder to the issue of the devisee of that estate, he intends the remainder-men to take as heirs of the body by descent from their ancestor, rather than as purchasers, themselves the root of a new succession."

To a like effect is the statement in *Den* v. *Emans,* Penn. (N. J.) 967, 971, that "The word *issue,* in a devise, as a word of limitation, is synonymous to heir; it is *nomen collectivum,* and takes in the whole generation."

In *Robins* v. *Quinliven,* 79 Pa. St. 333, these words were used: "The word 'issue' in a will *prima facie* means 'heirs of the body,' and in the absence of explanatory words showing that it was used in a restricted sense, is to be construed as a word of limitation."

In *Carroll* v. *Burns,* 15 Weekly Notes of Cas. 553 (55 Am. R. 778, n.), it is said: "The rule is unquestioned that *prima facie* in a will, the word issue means 'heirs of the body,' and will be construed as a word of limitation, unless there be explanatory words showing it was used in a restricted sense."

These decisions, to which many more might be added, do no more than give expression to a long-existing and well-known principle, and the rule, affixing to the term "issue" the meaning expressed in these cases, requires that the term, as used in the will before us, should be deemed to mean "heirs," in the sense in which that term is employed in the clause of the will which reads "unto Matilda Allen and her heirs forever." Hawkins Wills, 189.

It is contended, however, that the restriction upon the power of alienation evinces an intention to devise only a life-estate to Matilda Allen. But it is to be noted, that the language in which the restriction is expressed is ambiguous, if, indeed, the only just meaning that can be put;

upon it is not adverse to the appellant's contention. The restriction is, not that Matilda shall in no event alienate the land, but that she shall not do so in one event, that is, in the event that she survives her husband. The clear implication is, that during her husband's life she was empowered to alienate the land, so that, so far as the question of alienation is concerned, the words of this part of the will are not inconsistent with those which so clearly and decisively create an estate in fee. If only a life-estate was intended to be vested in the first taker, then there was no reason for imposing a restraint upon the power of alienation. But, under the rule of which we have spoken, we can not enter into conjectures as to the effect of the clause respecting the power of alienation, for, unless it can be affirmed that the clause is as clear and decisive as that which creates the estate, the estate can not be cut down. It would have been impossible to have found in all the domain of legal terminology stronger words than those employed, " to Matilda Allen and her heirs forever," and they must control the feeble influence of the clause which attempts to limit the right of Mrs. Allen to alienate the land devised to her.

There is another principle in the law of real-property, which exerts a controlling influence here, and that is this : Where an estate in fee is created in clear and decisive terms, a restriction upon the right of alienation is of no effect. There may be a partial restriction, but there can not be a general one. This must be so, or else reason and logic must be disregarded, for a fee simple necessarily implies absolute dominion over the land, and this can not exist if the power of disposition is hampered by a restriction destroying the absolute dominion inherent in the owner of the fee. *Mc Williams* v. *Nisly*, 2 S. & R. 507 ; *Moore* v. *Shultz*, 13 Pa. St. 98 ; *De Peyster* v. *Michael*, 6 N. Y. 467 ; *Mandlebaum* v. *McDonell*, 29 Mich. 78 ; 4 Kent Com. 5.

Undoubtedly the cardinal rule in the construction of wills is, that the intention of the testator shall prevail ; but where

words are used which have a settled legal meaning, full effect must be given to them.

The cases go very far upon this question. Thus, in *Doe* v. *Jackman*, 5 Ind. 283, it was said : "But the term 'heirs' is one of limitation. It has a fixed and legal meaning, and a mere presumed intention will not control its signification. It can not be held a word of purchase, unless the testator's intent so to use it appears manifest."

In *McCray* v. *Lipp, supra,* the court said : "Under the rule in Shelley's case, the fee passes in opposition to the apparent intention of the testator."

This court, in *Siceloff* v. *Redman, supra,* said : "Although from this language it is apparent that the testator intended that Virginia should take a life-estate only, and that her heirs should take after her death, and as the estate so intended to be granted to Virginia would terminate at her death, and could not, therefore, descend to her heirs, it would seem apparent that the testator intended that the heirs should take directly from him, as purchasers, and not by descent from the ancestor; yet, by the technical meaning applied to the word heirs, under the rule in Shelley's case, this apparent intention is denominated a presumed intent, and is not allowed to control the technical meaning of the word heirs, or in other words, despite the apparent intent of the testator, the rule gives the fee to the ancestor."

Again, in the case of *Gonzales* v. *Barton*, 45 Ind. 295, the court said : "If the question could be regarded as one of intention, there would be no difficulty in coming to the conclusion that in this case it was intended that Morey should take a life-estate only. But such is not the rule, as may be seen by reference to the cases cited as having been decided in this court."

Mr. Fearne states the rule very strongly, perhaps too strongly, for he says that the most positive direction will not defeat the operation of the rule in Shelley's case. 2 Fearne Remainders, sec. 453.

Allen *et al. v.* Craft *et al.*

Judge SHARSWOOD, in delivering the opinion of the Supreme Court, in *Ingersoll's Appeal*, 86 Pa. St. 240, 245, said: " Nothing certainly is better settled than that the intention of a testator, if not contrary to law, shall be carried out in the disposition he may make of his property after death. There are many things which he can not do, however clearly he may intend it. He can not create a fee and clog the power of alienation or relieve it from liability for debts. He can not create a perpetuity by an executory devise after an indefinite failure of issue or at any other future period, which may not be until after a life or lives in being and twenty-one years." The same learned judge, in *Doebler's Appeal*, 64 Pa. St. 9, at page 15, said : " While the intention of the testator, if consistent with law, is undoubtedly to be the polar star, yet we are bound to take as our guides those general rules or canons of interpretation which have been adopted and followed by those who have gone before us. It becomes no man and no court to be wise above that which is written. Security of titles requires that no mere arbitrary discretion should be exercised in conjecturing what words the testator would have used, or what form of disposition he would have adopted had he been truly advised as to the legal effect of the words actually employed. That would be to make a will for him instead of construing that which he has made."

In *Bender* v. *Fleurie*, 2 Grant, Pa. 345, the testator gave to his daughter certain land in these words: " She shall have it as her own during her life, and then it is to come to the heirs of her body for their own use." This was held to be clearly an estate tail within the rule, and it was said by the court : " But it is said, the testator did not mean to give her an estate tail. Perhaps he did not. But he has used words which in law mean nothing else. If he intended to give but a life-estate *voluit* [*sed*] *non dixit*, we must take what he said, not what he meant. * * * But no court in this State or in England, has ever treated the phrase ' heirs of her body,' as

words of purchase, when they are used with reference to the issue of a devisee, to whom a life-estate is given. They are words of limitation, and as such they create an estate tail in the first taker, which can not be cut down even by the clearest expressions of a desire, that it shall be a life-estate only."

Preston says: "In wills, the rule applies generally, and without exception, to the several limitations, as often as the gift to the heirs is without any expression of qualification," and in illustration of his meaning, he further says: "Neither the express declaration, *First.* That the ancestor shall have an estate for his life and no longer; nor, *Secondly.* That he shall have only an estate for life in the premises, and that, after his decease, it shall go to his heirs of his body, and, in default of such heirs, vest in the person next in remainder; and that the ancestor shall have no power to defeat the intention of the testator; nor, *Thirdly.* That the ancestor shall be tenant for his life and no longer, and that it shall not be in his power to sell, dispose, or make away with any part of the premises; * * * will change the word heirs into words of purchase." Preston Estates, 365.

In a work declared by the Supreme Court of Pennsylvania, in *Hileman* v. *Bouslaugh*, 13 Pa. St. 344, to be a "masterly disquisition," it is written: "The requisite limitations to the ancestor and his heirs being found, the rule must be applied. It can never be a question whether the rule shall be applied or not—whether the author of the limitations intended it to be applied or not. We might as well ask whether a testator intended to contravene the rule against perpetuities. It will no more yield to individual intention than any other fundamental law of property. The rule admits of no exceptions." Hays Principles for Expounding Dispositions of Real Estate, 96 (7 Law Library, 52).

The question here under discussion was examined by us in *Shimer* v. *Mann, supra,* and many authorities considered. As a result of that investigation it was declared that "Super-added words, which merely describe or specify the incidents

of the estate created by such a word of limitation as 'heirs,' do not cut down the interest of the devisee."

Stronger still is the expression of the rule in *Walker* v. *Vincent*, 19 Pa. St. 369, for it was there said: "The law does not pretend to carry out the intention of the testator in all cases; for many testators show a very clear intention to shackle the estates granted by them to a degree that is totally incompatible with any real enjoyment of them, and which the law does not allow. * *  The great merit of the rule in Shelley's case is, that it frustrates and is intended to frustrate unreasonable restrictions upon titles; for when an estate is declared to be a fee simple or fee tail, it is at once made subject to a limitation in its proper form, no matter how clear may be the testator's intention to the contrary."

The words of limitation when used in a will always control. It is as certain as any proposition in jurisprudence, that the words of limitation will bear down all others. There is, therefore, no escape from the force of the rule in Shelley's case, when the word "heirs" is used in its strict legal sense as a word of limitation. But the word "heirs" is not in every case a word of limitation, for it may be employed in a different sense. It has seemed to many that there is a conflict between the rule declaring that the intention of the testator must govern and the rule in Shelley's case; but this appearance of conflict fades away when it is brought clearly to mind that, when the word "heirs" is used as a word of limitation, it is treated as conclusively expressing the intention of the testator. Where it appears that the word was so used, the law inexorably fixes the force and meaning of the instrument. If once it is granted that the word was used in its strict legal sense, nothing can avert the operation of the rule in Shelley's case; so that the inquiry is, was the word used as one of limitation? The only method in which an instrument employing the word "heirs" can be shown not to be within the rule, is by showing that the word was not employed in its strict legal sense. As said in *Hileman* v. *Bous-*

*laugh, supra,* "The question on a will is not whether the testator intended that the rule should not operate, for that is not subject to his power, but whether he used the words 'heirs of the body' as synonymous with the word 'children,' or its proper equivalent." This is essentially the doctrine of our own case of *Shimer* v. *Mann, supra.* It is because the word "heirs" is not used in its legal sense, that the courts do not apply the rule in Shelley's case, for, where it is so used, the rule must be applied. It was because the word "heirs" was used as meaning "children," that it was held in *Ridgeway* v. *Lanphear, supra,* and in *Millett* v. *Ford, ante,* p. 159, that the rule did not operate. Here, however, we must hold that it does operate, because the explanatory or superadded words do not show with that certainty which the law requires, that the word was not used as a word of limitation. *Shimer* v. *Mann, supra,* and cases cited.

Judgment affirmed.

HOWK, J., does not concur in this opinion.

Filed Jan. 13, 1887; petition for a rehearing overruled March 30, 1887.