HAUSER et al. v. CITY OF ST. LOUIS.

(Circuit Court of Appeals, Eighth Circuit. May 21, 1909.)

No. 2,906.

1. DEEDS (§ 123*)—CONSTRUCTION—"HEIRS."

In a deed to the grantee and her heirs, a restriction upon alienation by the grantee is not alone sufficient to show clearly that the grantor used the term "heirs" as meaning "children," or otherwise than according to its recognized legal meaning.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 416, 417; Dec. Dig. § 123.*]

2. DEEDS (§ 135*)—CONSTRUCTION—CONVEYANCE OF PROPERTY IN TRUST FOR WIFE—EFFECT OF RESTRICTION ON ALIENATION.

A deed conveying property to trustees for the benefit of a married woman contained a provision that "it is understood  *  *  *  that the above-granted premises are conveyed as aforesaid for the sole and separate use and benefit of the said  *  *  *  and her heirs, and not to her assigns." Held, that it was the evident purpose of the grantors to secure the property to the equitable grantee free from the marital rights and influence of her husband, and construed in the light of such purpose the restriction on alienation continued only during her coverture, and that after the death of her husband, and while she remained a widow, the trustees having conveyed the legal title to her, she had full power to sell and convey the property in fee simple.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 135.*]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Christy M. Farrar and J. M. Holmes, for appellants.

Charles W. Bates and Charles P. Williams, for appellee.

Before HOOK, Circuit Judge, and RINER and AMIDON, District Judges.

AMIDON, District Judge. This is a suit in equity brought to obtain a decree defining and declaring the rights of complainants to a one-fifth interest in valuable real property situated in the heart of the city of St. Louis. In 1823 this property was owned by William Christy. On the 13th day of October of that year he and his wife executed the following deed, conveying the same to trustees for the benefit of their daughter:

"This deed, made and concluded this 13th day of October in the year of our Lord one thousand eight hundred and twenty-three, between Wm. Christy and Martha Christy, his wife, of North St. Louis, county of St. Louis, and state of Missouri, of the first part, and John O'Fallon, of St. Louis aforesaid, and Charles W. Thruston, of Louisville, state of Kentucky, in trust for Ann C. T. Farrar, the wife of Bernard G. Farrar, of the other part.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Witnesseth that the said William Christy and Martha, his wife, for and in consideration of the sum of eight hundred dollars lawful money of the United States, the receipt of which is hereby acknowledged, the said sum of eight hundred dollars paid to them by the said John O'Fallon and Charles W. Thruston, in trust as aforesaid, the said William Christy and Martha, his wife, have granted, bargained, and sold, and hereby do grant, bargain, and sell, unto the said John O'Fallon and Charles W. Thruston, in trust for the said Ann C. T. Farrar, now the wife of said Bernard G. Farrar, for her sole, separate, and only use, the following property, to wit:

"A square of ground on the hill in the addition to the old town of St. Louis laid off by said William Christy of two hundred and ten feet French measure in front by two hundred and seventy American feet back, bounded on the east by a street laid off by said Christy through said addition in its present direction, which passes on the north side of Clamorzan's, now Thomas Brady's, square on the main street, on the west by Sixth street, and on the south by a street parallel to the one passing up by said Brady's square—the lots in said square above sold known on the plan of said addition by Nos. (25, 26, 27, and 28) twenty-five, twenty-six, twenty-seven, and twenty-eight.

"To have and to hold unto them, the said John O'Fallon and Charles W. Thruston, in trust to and for her, the said Ann C. T. Farrar, the wife of said Bernard G. Farrar, to her sole, separate, and only use as aforesaid, the aforegranted and bargained premises, together with all and singular the privileges and appurtenances to the same belonging or in any wise appertaining, and to her heirs forever.

"It is understood by the said grantors that the above-granted premises are conveyed as aforesaid for the sole and separate use and benefit of the said Ann C. T. Farrar and for heirs, and not to her assigns, and to the use and benefit of no other person whatever, to have, hold, enjoy, or possses any part thereof.

"In testimony whereof the parties to these presents have hereunto set their hands and seals at St. Louis of the day, month, and year above written.

"W. Christy. [Seal.]
"Martha Christy. [Seal.]"

At the date of this conveyance Ann C. T. Farrar was the wife of Bernard G. Farrar. In 1847 the trustees, by quitclaim deed, transferred the legal title vested in them to Mrs. Farrar "for her sole, separate, and only use." Mr. Farrar died in the year 1849. On June 4, 1866, Ann C. T. Farrar, then being a widow, conveyed the property in question to the city of St. Louis, by warranty deed, in consideration of the sum of $245,000. The city rests its right to the property upon that grant. The complainants claim as heirs at law of Ellen Farrar, a daughter of Ann C. T. Farrar, being one of five children, the issue of the marriage between Ann C. T. Farrar and Bernard G. Farrar. It is not necessary for the purposes of this case to set forth fully the facts upon which they base their right, nor the peculiar reasons why that right is not barred by the statute of limitations. The bill was dismissed on general demurrer.

The whole controversy turns upon the proper interpretation of the deed above set out in full. The primary object of the grantors was to secure the property to their daughter, free from the marital rights and influence of her husband. That object is conspicuous, not only in the peculiar form of the conveyance but in all its provisions. The grantors show no solicitude as to the respective rights of their daughter and her children. Their concern was to protect the property against the rights and solicitations of Bernard G. Farrar. Every term of the deed should be interpreted in the light of this primary purpose.

By the first paragraph of the habendum clause an equitable estate in fee is granted to Ann C. T. Farrar and her heirs, forever. The next paragraph, however, says:

"It is understood by the said grantors that the above-granted premises are conveyed as aforesaid for the sole and separate use and benefit of the said Ann C. T. Farrar, and her heirs, and not to her assigns, and to the use and benefit of no other person whatsoever, to have, hold, enjoy, or possess any part thereof."

Seizing upon the phrase that the grant is not to the assigns of the grantee, counsel for the complainants make the following argument: They say, first, that, because the grant does not extend to the assigns of the grantee, it is impossible that she should take a fee in the property; hence they say that Ann C. T. Farrar took only a life estate. To support such a contention it is necessary to get rid of the words "heirs forever" in the paragraph preceding. This is accomplished by the familiar doctrine that the word "heirs" will be construed in a popular sense as meaning "children," when the entire grant shows clearly that such a meaning was in the mind of the grantor; and it is insisted that such a meaning in the present grant follows as a necessary conclusion from the restriction as to "assigns." The effect of the deed as thus interpreted is to convey to Ann C. T. Farrar a life estate in the property, with a remainder to her children then in being, opening, however, to let in after-born children, under the rule applied and explained by the Supreme Court of Missouri in Kinney v. Mathews, 69 Mo. 520.

This argument is based upon two fundamental fallacies: First, it is urged that the equitable fee granted to Mrs. Farrar is by a proper interpretation of the deed cut down to a life estate by the restraint upon her alienation of the property, and that the word "heirs" for this reason should be interpreted to mean "children." So far as we are aware, a restraint upon alienation alone has never been held to show clearly that a grantor used the term "heirs" as meaning "children." All the authorities agree that in order to justify such an interpretation the intent of the grantor must be clear. McDowell v. Brown, 21 Mo. 60; Allen v. Craft, 109 Ind. 476, 9 N. E. 919, 58 Am. Rep. 425; Roth v. Rauschenbusch, 173 Mo. 584, 73 S. W. 664, 61 L. R. A. 455. No case has been brought to our notice, nor have we been able to discover any case, in which a restraint upon alienation alone has been held to show that the grantor used the terms "heirs" other than according to its recognized legal meaning. In all the decisions brought to our notice by counsel for complainant, the restraint upon alienation was coupled with other language in the deed evidencing the intent. It was a cardinal rule of the common law that the grant of a fee, coupled with a restraint against all alienation of the property, did not limit the fee; but the restraint was held to be repugnant to the grant, and for that reason was rejected as of no force. 4 Kent, Com. 131; Potter v. Couch, 141 U. S. 296, 315, 11 Sup. Ct. 1005, 35 L. Ed. 721. If such an interpretation was necessary in the present case, we should not feel the slightest hesitancy in applying the rule and treating the restraint upon alienation as void.

Second. But no such interpretation is necessary. The limitation of the power of alienation, even when a fee is granted, has no application to estates in trust for the benefit of married women. This exception was found necessary in order to protect the rights of married women during coverture. It was at first held that restraints upon alienation, when married women were given the equitable ownership of property, were void, the same as in the case of legal estates. This, however, resulted in defeating the whole object underlying such separate estates. The subject is clearly explained by Lord Cottenham in Tullett v. Armstrong, 4 Mylne & Craig, 377, 405, as follows:

"When the court first established the separate estate, it violated the laws of property as between husband and wife; but it was thought beneficial, and it prevailed. It being once settled that a wife might enjoy a separate estate as a feme sole, laws of property attached to this new estate; and it was found, as a part of such law, that the power of alienation belonged to the wife, and was destructive of the security intended for it. Equity again interfered, and, by another violation of the laws of property, supported the validity of the prohibition against alienation."

See, also, 1 Leading Cases in Equity, pt. 2, p. 713.

The whole doctrine of the separate estate of married women is equitable, and the ancient common-law rules of property are applied to it only in so far as they are compatible with the object which courts of equity sought to attain in the creation of such separate estates. Mr. Pomeroy, after fully explaining the subject in his work on Equity Jurisprudence (section 1107 et seq.), says:

"The subject-matter on which the restraining clause is to operate may be any kind of property, real or personal, and any estate therein, absolute, for life, or for years." Section 1108.

Prof. Gray, in his work on Restraints on Alienation, says, at section 125:

"There is one exception to the invalidity of restraints on the alienation of fees, or absolute interests. When, in the case of married women, the doctrines of separate use and restraints upon anticipation came into existence, the interests, alienation of which it was sought to restrain, were life interests. It was only in Baggett v. Meux, 1 Coll. 138 (1844), that the question as to the validity of a clause against anticipation upon a gift of an absolute interest came up. In this case the legal estate in land was devised to a married woman, in fee, for her separate use, with a direction that she should not sell or incumber it. She did incumber it. Vice Chancellor Knight Bruce held that a restraint on anticipation was equally valid upon a fee simple as upon a life estate, and that the incumbrance was void. The decision was confirmed by Lord Lyndhurst. 1 Phil. 627."

See, also, Tiffany on Real Property, p. 1138; Perry on Trusts (5th Ed.) § 671; Brown v. Foote, 2 Tenn. Ch. 255, 259.

In speaking of a devise of a fee, coupled with an absolute restriction upon alienation during coverture, the court says in Robinson v. Randolph, 21 Fla. 629, 58 Am. Rep. 692:

"The court of equity having created such estate, it was held that it could modify its creature by annexing to it the restraining feature."

Such being the law, the entire foundation of complainant's argument is swept away. The deed being a grant for the benefit of a married woman, an absolute restraint upon her alienation of the property

during coverture was entirely consistent with her taking an equitable fee to the property, which, upon the death of her husband, became an absolute estate free from the restriction; for it is well settled that the trust continues only during the marriage relation. Pomeroy's Equity Jurisprudence (3d Ed.) § 1109. Upon its termination the wife became vested with all the powers over the property possessed by a feme sole. The deed of Mrs. Farrar, therefore, after the death of her husband, passed the entire estate to the defendant.

It is urged, however, that the exclusion of "assigns" should be interpreted as a limitation upon the quantum of the estate, instead of a restriction upon the grantee's power of alienation. But why should such an interpretation be adopted? There is nothing in the deed supporting it, and it is out of harmony with the primary purpose which caused the conveyance of the property to trustees. It may be conceded that the deed is not drawn with legal accuracy; but it seems to us that the general purpose of the grantors is not open to doubt. They were apprehensive that the provision which they were making for their daughter would in some way be lost through the improvidence or solicitation of her husband. The whole last paragraph of the deed seems to us to be simply the language of a layman seeking to emphasize that purpose. It may be that there was also in the minds of the grantors a desire that the property should continue for all time to be the family seat. If that was in fact an end desired, its accomplishment would cause such a restriction upon the power of alienation as the law could not sustain. Again, if we should interpret the word "heirs" in the deed as meaning "children," then it would contain no general words of inheritance. The result would be, as counsel for complainant says, that Mrs. Farrar would take an equitable estate for life, with a legal remainder to her children. Their estate, however, would also be for life, as the change of "heirs" to "children" would leave no words of general succession. As a result, upon the death of Mrs. Farrar's children, the estate would then revert to the grantors, or their heirs. Such a result, it is conceded by both parties, was never in the contemplation of the grantors. A fair interpretation of the last paragraph of the deed seems to us simply to limit Mrs. Farrar's power of alienation during her coverture.

The decree must therefore be affirmed.