## DETERMINATION AS TO THE CHARACTER OF THE ESTATE DEVISED.

Common Pleas Court of Hamilton County.

### JOHN KILGOUR V. HARRY HEY ET AL.

Decided, October 9, 1915.

*Wills—Trust Not Created Where the Object or Person Intended is Not Ascertainable—Presumptions Can Not be Based Upon Presumptions —Commands or Recommendations to a Donee—Construction of the Words "My Family"—Estate in Fee Not Reduced to an Estate in Tail by Language of Doubtful Meaning.*

1. A devise of a farm, where made by a batchelor to his nephew who was also a batchelor, with the limitation that it was to be preserved "for himself and his heirs for as many lives as the laws of Ohio will permit, in the name of my family, * * * it being my anxious desire that the said farm where I have resided for twenty-seven years and expended so much money shall continue in my family as long as the law will permit," does not create a trust in the estate devised to said nephew, because of uncertainty as to the person or object for whose benefit the trust was intended.

2. Where a devise of land in fee simple has been created in clear and unmistakable terms, it can not be reduced to one in tail by subsequent language which goes no further than to create a doubt as to the estate intended.

*Suire & Rielly, Worthington, Strong & Stettinius* and *Dudley C. Outcalt,* for plaintiff.

*James G. Stewart,* for answering defendants.

CUSHING, J.

This action is prosecuted by plaintiff to quiet the title to the land described in the petition, about one hundred and sixty acres in that part of Cincinnati known as Hyde Park, as against any claim of the defendants.

The answering defendants deny that plaintiff has title to the land; that he can not quiet something that does not exist. They say that they are the owners of the property; that they took title from James Hey; that Benjamin Hey was a tenant in tail and that he is now dead; that they acquired the fee to the prop-

erty through Harry Hey, sole devisee under the will of Benjamin Hey.

James Hey, by will dated May 22, 1843, devised the property in fee to his nephew, Benjamin Hey. On April 1, 1845, he executed an "addition and amendment to my will as a codicil." Items third and fourth of that codicil must now be construed.

"Item Third. It is my will and I hereby direct my said nephew, the said Benjamin Hey, to whom I have already devised my real estate, to preserve for himself and his heirs for las many lives as the laws of Ohio will permit, in the name of my family, that portion of my real estate situated in Hamilton county upon which I have resided, known as the Beauteau Hill Farm and being the same I purchased of William Jones by deed dated April 1st, 1818, it being my anxious desire that the said farm, where I have resided for twenty-seven years and, expended so much money, shall continue in my family so long as the law will permit.

"Item Fourth. Since I made my last will I have purchased several tracts of land of which I am now seized in fee, and I hereby devise the same, with all the real estate and personal property which I now hold, with the exception of the real estate devised heretofore to my nephew, William Hey, to my nephew, Benjamin Hey, aforesaid, to have and to hold the same to himself, his heirs and assigns; it being my intention to make the said Benjamin my sole legatee and devisee with the exceptions aforesaid."

The case was exhaustively argued by counsel on both sides. Their theories clearly appear from their briefs and are as follows:

The defendants claim that James Hey entailed the property, "My Beauteau Hill Farm"; that Benjamin Hey was a tenant in tail; that all that Benjamin Hey sold to Rukard Hurd was his right of possession and occupancy; that the words "will and direct" used in the codicil are positive and mandatory; that the word "preserve" means to keep; that the phrase "in the name of my family" means the children of Benjamin Hey; and that the estate in tail ripened into a fee in Harry Hey.

Plaintiff claims that both by the will and the codicil James Hey gave his Beauteau Hill Farm to Benjamin Hey in fee simple; that if James Hey by this codicil intended to entail

this property, he did not do so by the language he used; that if it was the intention of James Hey to create a trust, precatory or otherwise, in Benjamin Hey, that provision of said codicil is void for uncertainty.

Wills should be construed with great liberality for the purpose of arriving at the intention of the testator. But it is also the law that the expressed intention of the testator can not be regarded in the absence of a disposition of the property. Conjecture is not permitted to supply what the testator has failed to indicate.

I shall now consider the two main propositions of defendants' counsel, namely, that by the second codicil to James Hey's will he ingrafted a trust upon the estate in Benjamin Hey in favor of himself and his issue; and, second, that James Hey devised the property to Benjamin Hey and afterwards by this codicil limited the title to an estate tail.

By his will, James Hey gave this property to Benjamin Hey in fee simple, and it is claimed, by the codicil it was reduced or limited to an estate tail.

The rule by which it is to be determined whether or not the estate so given was cut down when considered in connection with the language used by the testator is:

That when property is given absolutely to any person and the same person is, by the giver, who has power to recommend, and has recommended or entreated or wished to dispose of that property in favor of another, the recommendation, entreaty or wish shall be held to create a trust,

*First.* If the words are so used that upon the whole they ought to be construed as imperative;

*Second.* If the subject of the recommendation or wish be certain; and,

*Third.* If the objects or persons intended to have the benefit of the recommendation or wish be also certain.

If the words are so used they ought to be construed as imperative. The words "will and direct" are as strong and imperative as any words in the English language, and if standing alone there would be no question as to the meaning. But they are modified, and the rule above stated is, "if upon the

whole,'' etc. By the statement that, ''to whom I have already devised my real estate,'' James Hey recognizes that upon the taking effect of the will his nephew had this property in fee.

In the next phrase is the direction to preserve it for himself and his heirs, not the heirs of his body nor the male heirs of his body, but to his heirs. This in law is a fee simple, but just following the foregoing are the words, ''for as many lives as the law of Ohio will permit.'' This is intended as a limitation upon the estate to be preserved, and so far as it goes must be construed and held to be a command on the donee of the bounty of James Hey.

There can be no question as to the subject of the recommendation. It was ''my Beauteau Hill Farm,'' the property in question. Further comment on this second section of the rule is unnecessary.

It is the third section of the rule above laid down that has caused me much difficulty in arriving at a conclusion.

The third subdivision of the rule is: ''If the objects or persons intended to have the benefit of the recommendation or wish be also certain.''

In this will there is no residuary clause.

Counsel for defendants cite a number of cases to show that the word ''heirs'' means children.

In proper cases that, no doubt, is true, but it is clear to my mind that James Hey did not have the children of Benjamin Hey in mind when he executed this codicil. He further qualified the word ''heirs'' by the expression ''in the name of my family.'' James Hey was a bachelor; Benjamin Hey was unmarried at the time of the execution of this will and lived so for thirty years afterwards. ''In the name of my family,'' therefore, was not intended to mean the children of Benjamin Hey, and by no construction of language or application of rules of law can such a conclusion be reached. ''My family'' clearly means the family name of James Hey. Benjamin Hey might have married and had a daughter, who would naturally have married, possibly before the death of her father. It could not be said in that instance that James Hey meant the children of Benjamin Hey. It was not the family of Benjamin Hey for

whom the property was to be preserved. It was to be preserved to the heirs of Benjamin Hey in the name of the family of James Hey. In other words, it was the name Hey that the testator had in mind when he drew this codicil. If this provision of the codicil means anything, it is that Benjamin Hey was not to dispose of the land until he came to the end of his life and that he could give it to any one by the name of Hey who was in any degree related to the testator.

If this conclusion be correctly stated, one of two things must follow, either that the word "heirs" did create an estate in fee simple, or, that the objects or persons intended to have the benefit of the recommendation or wish were uncertain and that a trust was not created.

In answer to the contention of counsel for the defendants that the words "my family" mean children, I have to say that "my family" (James Hey's family name) was the object of the trust, if there was a trust. It could not be his (James Hey's) children, or his descendants, as he was a bachelor. Therefore, this part of the codicil must have been uncertain, in fact, not ascertainable.

I desire to call attention to another phase of this expression "my family." Counsel for defendants argued that the words "my family" mean children. By this he means that the decisions of the courts have presumed that the testator meant children. Followed to its logical conclusion, this argument is, that James Hey presumed that his nephew, being a young man, would marry; that in the natural course of events the presumption would be that he would have children; that as the number of male and female children born to parents are about equal in number, the further presumption would be that Benjamin Hey would have a male child, and that this property was intended to be entailed to such male child.

My understanding of the law of Ohio is that a presumption can not be based on a presumption. The law can presume that "family" means "children," but you can not go a step further. You can not presume that a man will marry, presume that he will have children, presume that at least one of those children will be a male, and that that property was intended for him.

The conclusion therefore is, that the object or person under the third subdivision of the rule of trust is uncertain, and that any language which the testator used did not create a trust.

The next contention of defendant is, that this is an estate tail.

Estates tail are either general or special. Tail-general, is where lands and tenements are given to one and to the heirs of his body begotten (meaning all heirs by him begotten). Tenants in tail special is where the gift is restrained to certain heirs of the donee's body and does not go to all of them in general.

Counsel can not contend that he intended a tail general, as it is limited to the name of Hey and only such as bear that name could be considered the donees in tail. It could not mean the male heirs of the body of Benjamin Hey, first, because there is no expression in the will that could, by any construction, be construed into such meaning. If such were attempted the court would, by construction, have to read into the will the words necessary to give such a meaning. My understanding of the law is, that a court can construe the language used by the testator, but he can not add or omit any word or words.

A testator may give such an estate in his lands as his will or caprice direct. A testator can not give a fee simple estate and fetter the power of alienation. He can not use language that has a settled legal meaning and have it construed into another estate by vague and unsettled expressions. A fee simple implies absolute dominion over the land; and in construing a will language which has a settled legal meaning must be given its full effect. When such an estate is created, it can not be cut down by language less clear and certain than that used in creating the estate.

When an estate in fee is created in clear and decisive terms, a restriction upon the right of alienation is of no effect. The law of Ohio up to this time is settled that the intention of the testator shall control the disposition of his property after his death. Courts are bound to take as guides the general rules of interpretation which have been laid down and followed by the courts of last resort in this and the various states. It becomes

no man and no court to be wise above that which is written. That would be to make a will for him instead of construing what he has made.

Estates tail are not favored in this country, but are in fact either prohibited or, as in our state, very essentially limited and curtailed. The presumption is against the intention to create them and that presumption must be overcome by language entirely free from ambiguity. It is a rule of the courts in construing written instruments, that when an interest is given or an estate conveyed in one clause of the instrument in clear and decisive terms, such interest or estate can not be taken away or cut down by raising a doubt upon the extent and meaning and application of the subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate.

The word "heirs" as used in these codicils was intended as one of limitation. The intention was to give the estate to Benjamin Hey and his heirs, whomsoever they might be, at the time of his decease, and it was to be preserved, or kept, for him and to them, that is, his heirs generally, and the "anxious desire" of the testator was that his nephew, Benjamin Hey, would not permit this farm to pass out of the Hey name.

The conclusion is that a trust was not created as the objects or persons to be benefitted were not certain or ascertainable; that the estate was not entailed as the terms and language used do not come within the rules of law creating such an estate; that the language "to whom I have already devised my real estate" recognize in Benjamin Hey an estate in fee simple, and the subsequent language does nothing more than create a doubt as to what estate Benjamin Hey was to take, that is, the third item of the codicil comes within the rule laid down by the Supreme Court of Ohio, to the effect that when an estate is given by clear and concise language it can not be cut down by raising a doubt as to the meaning of a subsequent clause in the will; that the words "my family" were not intended by the testator to mean the children of Benjamin Hey; that a presumption of law can not be based on a presumption.

Therefore, Benjamin Hey held and conveyed an estate in fee simple to Rukard Hurd. The plaintiff in this action has a fee simple title to the property in question and is entitled to have the same quieted as against the defendants in this action. The answer and cross-petition will therefore be dismissed. A decree will be entered according to the findings herein stated.

The authorities used and from which some of the language in the foregoing opinion was taken are: *Crane* v. *Doty,* 1 Ohio St., 276; *Collins* v. *Collins,* 40 Ohio St., 363; *Knight* v. *Knight,* 3 Beaven, 172-3; *Allen* v. *Craft,* 109 Ind., 476; 2 Blackstone Com., 113.