## CLEVELAND *v.* SPILMAN and Another.

WILLS—CONSTRUCTION OF.—A, by his will, devised his real estate as follows: "My land, being the south half of the northeast quarter of section 36, in township 3 south, of range 12 east, I do also will and bequeath to my said wife, and my heir, if she should have one, equal, if not, all to her." The land was misdescribed in the will by the use of the words "northeast quarter" for "northwest quarter," the former tract never having been owned or claimed by the testator.

*Held,* that the intention of the testator to devise the southwest quarter of the section was apparent.

*Held,* also, that while technical words of inheritance are not necessary in a will to pass a fee simple, a life estate only will pass unless it affirmatively appears that a greater estate was intended.

*Held,* also, that the intention of the testator, in this case, to dispose of his whole estate to his wife and unborn child, is apparent from the terms of the devise, and from the circumstances of the case.

APPEAL from the *Gibson* Circuit Court.

FRAZER, C. J.—This was a suit for partition by the appellant. A demurrer to the petition having been sustained, we are called upon to review that decision of the court below.

The petition, as amended, alleges that on, &c., one *John Spilman,* father of the defendant *Spilman,* was seized in fee of the south half of the northwest quarter of section 36, township 3 south, of range 12 west, in *Gibson* county; that he did not own or claim to own any other lands anywhere; that he then made his last will and testament, (a copy of which it is alleged is filed with the complaint,) by which he devised the land described to *Eliza,* his wife, (then *enciente,*) and his heir, if his wife should have one; that the testator soon after died, and his wife survived him, and shortly after gave birth to the defendant *Spilman,* whereby he and *Eliza* became owners in common of the land; that afterward the plaintiff married the widow, of which marriage there was issue one child, the defendant *Jesse Cleveland;* that *Eliza* died in 1861, whereby the plaintiff and the defendant *Jesse Cleveland* became seized in fee each of one-sixth of the land, and the defendant *Spilman* of four-sixths. It is further shown that *Spilman's* widow and son remained in possession of the land, claiming it under the will, until her marriage with the plaintiff, and thereafter the son continued in the possession until 1863, with the consent of his mother, during her life, and afterward with the plaintiff's consent, all the time claiming under the will. It is also averred that the land is described by the testator in his will as "my land," with an additional description erroneously naming it as the "south half of the north-*east* (instead of north-*west*) quarter of the section." This mistake, it is averred, was not known to the defendant *John Spilman* until after his mother's death, nor to the plaintiff till after the commencement of this suit; that since such discovery *John* has conveyed the whole tract

to other parties (who are made defendants,) who had full knowledge of the facts, and who wrongfully hold and claim it against the plaintiff and his son.

So much of the will filed with the complaint as is material to the question under consideration is as follows: "After all my just debts are paid, the remaining balance of my personal property, &c., I do will and bequeath to my beloved wife *Eliza*, and my heir, equal, if she should have a living heir, and if she should not have an heir to enjoy my personal property, it shall all belong to my beloved wife *Eliza*. My land, being the south half of the north-east quarter of section 36, township 3 south, of range 12 east, I do also will and bequeath to my wife, *Eliza Spilman*, and my heir, if she should have one, equal, if not, all to her. *October* 22, A. D., 1834.

his<br>
JOHN SPILMAN."<br>
mark.

"Acknowledged in presence of *Jesse Montgomery* and *Alexander Rosborough.*"

There was also a certificate of probate appended, showing that the will was admitted to probate on the 8th of *November*, 1834.

A question is made as to the sufficiency of the certificate of probate, but we think it does not arise upon the demurrer. It does not appear that the will was ever in the power of the widow to control, (R. S. 1831, § 16, p. 273,) and it is, therefore, as to the question raised on demurrer, immaterial whether it was ever admitted to probate or not, for she would at any rate take under its provisions.

It is also argued that the will as exhibited does not appear to have been executed by the deceased; that the fair presumption, from the appearance of the signature,

his<br>
"John Spilman," no mark appearing, is that this was writmark.

ten by another person, so that the deceased might make his mark, and that as he never did so, he never executed the will.

A brief and conclusive answer to this suggestion is that for aught that can be seen on the face of the paper he may have adopted this signature as his, and that the allegation in the complaint that he "made this, his last will and testament," may therefore be true, and must, on demurrer, be assumed to be admitted. So, also, the averment that he shortly afterward died.

This brings us to the consideration of the effect of the will itself, as a disposition of the real estate in controversy.

The legitimate end to be attained by the examination and construction of the instrument, is to ascertain the intention of the testator. To say that he intended to dispose of land to which he made no claim, and had no title whatever, would be absurd, and cannot be thought of. He speaks of the land as "my land," and attempts to add a particular description, which, by the error of a single word, designates a tract which he did not own and never pretended to claim. That this particular description was intended to be of the tract in suit is so clear that any further discussion upon the subject in this opinion would be inexcusable.

But it is urged that the widow could take, by this will, only an estate for life, inasmuch as there are no words of inheritance; and it is argued that there is nothing, taking the whole instrument together, so indicating an intention of the testator to confer upon her a larger estate, as to warrant the court, in the absence of words of inheritance, in so construing it as to give her a fee simple. If she took only an estate for life, of course the plaintiff, her second husband, has no share in the land, and no good cause in court.

The common law anciently imposed many restraints upon the alienation of real estate, for reasons that were purely feudal; and though the severities of that system have long since been swept away, by the gradual progress of a civilization and refinement with which it was inconsistent, yet as this change was the work of ages, and was wrought by slow degrees, the theory on which it was founded to this day

Cleveland *v.* Spilman and Another.

constitutes the basis of the *English* law of real property, and of the *American* as well, by virtue of the adoption of the common law here.  As these restraints were, from time to time, removed in that country, the leaning of the courts in favor of the common law, and of the theories in which the judges had been educated, actually preserved, until our own times, some rules which have long since ceased to have the semblance of any reason for their support.  Thus, it is too well settled to be now questioned by the courts, where a statute has not interposed, that in a deed there must be words of inheritance to pass a fee simple in lands.  But in a grant of personal property this is not necessary.  This distinction never rested on the slightest reason in this country.  But less strictness was required in the disposition of real estate by will, for the reason that when this mode of alienation was introduced, the rigor of feudal times was greatly worn out, and hence more liberality prevailed.  We believe that it has never been held that the word "heirs," or any other legal word of inheritance, was necessary in a will to transmit an estate in fee simple.  Upon the ground that a testator may often be without that professional assistance of which a party to a deed can always have time to avail himself, it was long ago held that the intention of the testator, as it could be collected from the whole will, more than from the exact legal import of the words employed, should be regarded. Cowp. 352.  But still it was uniformly held that unless it thus affirmatively appeared that a greater than an estate for life was intended, only the latter would pass, and in this shape the law has come down to us, modified only by a manifest tendency of the courts to be more easily satisfied that an estate of inheritance was intended by the testator. Many of our States have interposed by legislation to establish the better rule that both in deeds and devises the estate passed shall be held to be a fee simple, unless the instrument contains words of limitation.  This State did so in 1843.  R. S. 1843, p. 485.  But singularly enough, the

provision was omitted in the revision of 1852, as to wills, though continued as to deeds.

In the case before us, it will be observed that the will is wholly free from terms of art, that its structure is awkward and unprofessional, and that evidently the draughtsman was incapable of embodying the wishes of the deceased in legal phraseology. This circumstance may properly be considered as accounting for the absence of those apt forms of expression which a competent person would have employed, if seeking to make the instrument pass an estate in fee. Looking at the entire paper, and the extrinsic facts alleged in the complaint, it is not possible to doubt that the testator meant to dispose of his whole estate, and that his wife and unborn child were the beneficiaries to whom he intended to secure it, and to each of them one-half of both personalty and realty; and in the event that the child should not be born alive, then the wife should take the whole. His feelings toward her are somewhat evinced by the terms of endearment employed in the will, and still more by the fact that she is named as executrix. That such is the disposition made of the personal estate is clear. That the same thing was intended as to the land is, as we think, very apparent, from the fact that in disposing of it the will employs almost the identical words which are used concerning the personalty. Thus, as to the latter, "I do will and bequeath to my beloved wife, *Eliza Spilman*, and my heir, equal, if she should have a living heir"—and thus, as to the land, "My land (attempting to describe it) I do also will and bequeath to my wife, *Eliza Spilman*, and my heir, if she should have one, equal, if not all to her." Now no one ignorant, as the draughtsman and testator surely were, of the nice professional learning to which we have already referred, would ever doubt that the same language thus employed in disposing of real estate and personalty, would be sufficient to pass the same absolute and unqualified estate in both. Common sense suggests no doubt of it whatever, and in searching for affirmative indications of the actual intention

of a testator who was without professional aid, this seems very conclusive of what that intention was.

The judgment is reversed, with costs, and the cause remanded, with directions to overrule the demurrer to the complaint.

*C. Baker* and *J. Pitcher*, for appellant.

*J. G. Jones* and *M. L. Johnson*, for appellees.