SOPHIA ELLIOTT ET AL. *v.* R. D. TOPP ET AL.

WILL. *To be executed as written. Mistake by testator. Intention.*

The plain provisions of a last will and testament must be executed as written, even though it be evident that the result will not be what the testator contemplated or desired; as, where a testator, who died in 1862, charged his estate, in favor of his adult children, with legacies to be paid before anything should be given to his minor children (he believing his estate ample to make provision for all), this provision must be carried out, though, by reason of the war, his estate has been so reduced that the payment in full of the legacies to the adults will leave nothing for those who were minors.

APPEAL from the Chancery Court of Lee County.
HON. BAXTER MCFARLAND, Chancellor.
John S. Topp, Sr., died in 1862, leaving a last will and testa-

ment, which, after providing for the payment of his debts, devised and bequeathed certain lands, slaves, and other personalty to his widow during her lifetime, and then contained the following articles:

"Thirdly. I have given to my son, William A., and to my daughter, Jane C. McCain, as much property as I am probably able to give to my other children. But after all my other children shall have received as much property as shall amount to three thousand dollars in value, then William and Jane shall be entitled to come in and share alike in the remainder of my estate; and that there may be no altercation or misunderstanding between my children and my executors, I will state that I have given my son Thomas property which I estimate to be worth nineteen hundred and fifty dollars, and to my son John about two thousand. dollars in money and property, to James about seventeen hundred dollars' worth of property, and to Robert sixteen hundred dollars' worth of property, and to Harvey in money and property about four hundred and fifty dollars, and I intend to convey to him a quarter-section of land, which will make an advancement for him, in all, of two thousand and fifty dollars—the quarter-section of land being S. E. ¼ of sec. 14 in town. 11, range 5 E.

"Fourthly. As soon as money can be raised out of my real and personal estate not herein specifically devised, I wish my executors to pay over to Thomas, James, and Robert as much as will make up for them, severally, as much as I have given Harvey; and then I wish them to pay over to my son John three hundred dollars, in view of his affliction and necessitous circumstances, before any further advances are made to my other children. I wish my executors to ascertain whether my estate will then be sufficient to make up for Maria, Sophia, and Allison the sum of twenty-three hundred dollars in money or property. After these things shall be ascertained and done by my executors, then shall advancements be made until Thomas, James, John, Robert, Harvey, Maria, Sophia, and Allison shall have three thousand dollars each."

At the time of his death the testator probably had an estate sufficient to make all of his children equal recipients of his bounty,

as contemplated in his will, but the results of the war left the executors nothing with which to pay legacies. The testator's widow, Elizabeth G. Topp, received the land devised to her, or a part thereof, and enjoyed the same to the date of her death, which occurred on the 12th of February, 1885. John, Robert, Harvey, and Maria, sons and daughter of the testator and Elizabeth G. Topp, died before the latter.

In April, 1885, R. D. Topp and Harvey Topp, sons of Harvey Topp, deceased, and grandsons of the testator, John S. Topp, Sr., deceased, filed the bill in this cause against the other children or descendants of children of the testator, asking for a sale of the land devised to the widow and enjoyed by her at the time of her death, and for a division of the proceeds thereof amongst the complainants and defendants.

Sophia Elliott (*née* Topp) and Allison Topp answered the bill, contending that as they had received nothing from their father's estate, they should first be paid, respectively, out of the proceeds of the land amounts which would equal the shares received by his other children before the complainants would be entitled to anything. The evidence showed that the quarter-section of land which the testator, in his will, said he intended to convey to Harvey Topp was so conveyed. It was also proven that the respondents were minors at the time of their father's death, and had received nothing of his estate, either from him or his executors.

The Chancellor rendered a decree ordering the land to be sold, and the proceeds divided "between the legatees in the will of John S. Topp, according to said will." The decree stated that "Thomas Topp has received one thousand nine hundred and fifty dollars; James Topp, one thousand seven hundred dollars; John Topp, two thousand dollars; Robert Topp, one thousand six hundred dollars; and Harvey Topp, two thousand and fifty dollars;" and then directed that the commissioner "shall divide the proceeds of said sale between James, Robert, and Thomas Topp, as follows: first, to Robert Topp enough to make his amount one thousand seven hundred dollars, with what he has already received under the will, and then to both James and Robert Topp enough to make

their amount one thousand nine hundred and fifty dollars, equal to Thomas Topp under the will, and then the balance to Thomas, James, and Robert Topp equally, until they have received two thousand and fifty dollars, and the balance, if any, to Sophia Elliott and Allison Topp, and the others after them, as the will directs."

From this decree the respondents appealed.

*W. L. Clayton* and *F. M. Goar*, for the appellants.

We assert that every part of the will shows the paramount desire and intention of the testator to be equality among his children.

Equality seems to be the burden of the testator's mind in drafting his will (except three hundred dollars to his son John, in view of his affliction, etc., which the reports of the executors show was paid John).

It will not do to give a literal construction to a will when it evidently thwarts the intention of the testator.

The *intention* of the testator is the first and great object of inquiry in the construction and interpretation of wills. We must look to the *whole* instrument, the character of the estate, and the circumstances under which it was made. 2 Blackstone, marginal page 381 and note 22; 4 Kent's Com., marginal page 535; *Houghton* v. *Brandon*, 40 Miss. 742; *Tatum* v. *McClellan*, 50 Miss. 1; *Watson* v. *Blackwood*, 50 Miss. 15; Redfield on Wills, part 1, 432, 433, 434, 435, §§ 1, 2, 8, 19, 21, 22.

As to the *intention* of the testator in relation to the children who got nothing by way of advancement, it seems too clear for argument that they were to be made equal. The least amount received by legatees receiving anything is one thousand six hundred dollars. There is a tract of land now to sell belonging to the testator's estate. We claim the proceeds of sale should, in justice, equity, and in conformity to the manifest intention of the testator's last will, be paid to appellants, or so much thereof as may be necessary to make up to them one thousand six hundred dollars each at least. That this was the intention of the testator there can be no doubt.

*W. D. Anderson,* for the appellees.

It is well settled that the plain and "unambiguous words of the will must prevail, and are not to be controlled or qualified by any conjectural or doubtful construction growing out of the situation, circumstances, or condition, either of the testator, his property, or his family." See Redfield on Wills, 3d ed., 429, 430, paragraph 12. As in this case, if the testator has made a mistake as to the amount of his property, or if from any cause whatever there is not enough to carry out his intention, still this should not operate in construing the will more favorably to the appellants.

I admit, for the sake of argument, that the testator *did intend* for this property to be applied to make up any deficits in the legacies after the death of the widow. Still, he states that it must be applied in a certain way, and according to my construction of the will, all of the legatees, except the first two named (who have received three thousand dollars), will have to be paid two thousand and fifty dollars before appellants are entitled to anything.

CAMPBELL, J., delivered the opinion of the court.

It is manifest that the testator intended equality among his children as objects of his bounty, and thought he was providing by his will to secure it, but he assumed the sufficiency of his estate, and committed the error—fatal to his desire for equality, because of changed conditions—of charging the residuum of his estate in favor of certain of his children, and postponing the others until this charge was satisfied. Could he have foreseen what would occur, he would not have done this, we are sure, but the duty of courts is to execute a will as made, and not to make one for the testator. What he plainly said must be done should be done, although it may be seen that he would not have said it if he had known the conditions in which his direction would have to be applied and executed. We follow the will in holding that the appellants must be postponed until the bequest to the appellees shall be satisfied.

*Affirmed.*