PETER KIENE, JR., Appellant, v. EMILIE GMEHLE, et al., Appellees.

**Wills:** CONSTRUCTION: ESTATE FOR LIFE: RULE IN SHELLEY'S CASE. Where a will devised to a daughter of the testator his whole estate "for and during her lifetime, to have and to enjoy the rents, issues and profits and income of the whole of said estate, real and personal, to her separate use and benefit for and during the term of her natural

lifetime, and on her demise the said estate" to descend and "vest in
such heirs of her body begotten, in fee simple," *held*, that the
daughter took an estate for life, and that the rule in Shelley's case
was not applicable.

*Appeal from Dubuque District Court.*—HON. D. J.
LINEHAN, Judge.

THURSDAY, MAY 19, 1892.

ACTION in equity to forclose two mortgages on certain real estate given by the defendants Emilie Gmehle and Gottfried Gmehle, her husband. Frederick Mack Gmehle, a minor, being made a defendant, as claiming an interest in the mortgaged property, answered by his guardian *ad litem*, claiming to be the owner of said real estate under the will of his grand-father, Jacob F. Mack, deceased, subject only to the life estate of his mother, the defendant Emilie Gmehle, and setting out said will. The plaintiff demurred to the answer, "and as grounds of demurrer states that the said will as pleaded gave the said Emilie Gmehle an absolute estate in fee simple in the mortgaged property, and the said Frederick Mack Gmehle took no interest in the same." This demurrer being overruled, and the plaintiff refusing to further plead, his petition was dismissed as to the defendant Frederick Mack Gmehle. The plaintiff appeals.—*Affirmed.*

*Alphons Matthews* and *Powers & Lacy*, for appellants.

*Henry Michel*, for appellee.

GIVEN, J.—Jacob F. and Maria Mack, husband and wife, being seized of separate estates, joined in executing their last will and testament, as follows:

"We, Jacob F. Mack and Maria Mack, of the city of Dubuque, in the county of Dubuque and state of

Iowa, being seized of separate estates, and being mutually desirous of providing for the disposal of the same in the event of our decease, and to provide for the control and enjoyment of the same during the lifetime of the survivor of us, and being of sound and disposing mind, do, hereby make and declare this to be our last will and testament of each of us, the same as if separately written for each. *First.* After first paying the debts which may exist against the first decedent, including funeral expenses and of last sickness, the estate of such decedent, both real and personal, shall descend to and vest in the survivor, to have and to hold the same for life, and to have and enjoy the rents, issues and income thereof for and during the lifetime of such survivor, to his or her own use. *Second.* On the demise of the survivor, the whole of the estate of both of said parties, after paying the debts which may then exist against the last decedent, and including funeral expenses and the last sickness of such decedent, out of the separate estate of such decedent, shall descend to and vest in Emilie, the daughter of these testators, for and during her lifetime, to have and to enjoy the rents, issues, and profits and income of the whole of said estate, real and personal, to her separate use and benefit for and during the term of her natural lifetime, and on her demise the said estate, both real and personal, shall descend to and vest in such heirs of her body begotten, in fee simple. *Third.* In case our said daughter, Emilie, shall die leaving neither of us surviving her, and without heirs of her body begotten, or in case she shall survive the survivor of us, and shall die upon entering upon the enjoyment of said estate for life, as before provided, without leaving any such heirs of her body begotten as aforesaid, then on her demise said estate shall descend to and vest in equal parts to the heirs-at-law of said testators, the one equal half of said estate to the heirs-at-law of each of said testators

in fee simple. *Fourth.* We, the said testators, do hereby grant, devise, and bequeath such estates as we may die seized of, both real and personal, to the persons named and designated in this will, and in accordance with the foregoing and preceding terms and conditions for descent thereof. *Fifth.* In case our said daughter, Emilie, shall survive the survivor of us, and enter upon the enjoyment of said estate, we do hereby appoint her sole executrix of this our last will and testament, and of the survivor of us, and desire letters granted to her without any security.

Witness our hands, at Dubuque, this sixteenth day of June, A. D., 1871.

[Signed.]                        "JACOB F. MACK,
                                 "MARIA MACK.

In presence of                   "JAMES BURT,
                                 "JOHN P. BURT."

Jacob F. Mack, the survivor, died in 1876, seized of the property in question. The defendant, Frederick Mack Gmehle, is the son and only heir of Emilie Gmehle "of her body begotten."

I. The question to be determined is whether by this will Mrs. Gmehle took an estate in fee simple or a life estate in the mortgaged property. If the former, the demurrer should have been sustained; if the latter, it was properly overruled. It is alleged that Jacob S. Mack died seized in fee simple of this property. The question before us is not affected by the provisions of the will as between him and Mrs. Mack; it is as though he alone had executed the will. The appellant's contentions are that what is known as the "Rule in Shelley's Case" (1 Coke, 219) prevails in this state, and that under that rule Mrs. Gmehle took an estate in fee simple because of the provisions in the will that "on her demise the said estate, both real and personal, shall descend to and vest in such heirs of her body begotten in fee simple." There is much discussion and

some difference of opinion in the books as to the origin, definition and propriety of the rule in Shelley's Case, but as the definition given in 4 Kent's Commentaries, 225, is recognized in *Pierson v. Lane*, 60 Iowa, 60, we do not inquire further. The rule as there defined is as follows: "When a person takes an estate of freehold, legally or equitably under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body as a class of persons, to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

The intention of the testator as shown by the will, construed according to established rules, must control. In *Hanna v. Hawes*, 45 Iowa, 439, it is said: "The cardinal principle to be kept in view is that the intent of the testator, if possible, is to be ascertained in the construction of wills." In *Benkert v. Jacoby*, 36 Iowa, 273, it is said that the courts "always look upon the intention of the testator as the polar star to direct them in the construction of wills." "The object of all rules of interpretation is to discover the intention, and this should be gathered from the whole instrument." *Hopkins v. Grimes*, 14 Iowa, 72. Courts may not give effect to any other result than that intended. To do so would be to make the will for the testator. Neither may they defeat the intention when it is lawful. There are some respectable authorities that hold that the rule in Shelley's Case is independent of the intention of the donor or devisor; that it is absolute and imperative. Such application of the rule is not sanctioned by reason or the current of adjudicated cases in this country. It is this misapplication of the rule that has brought it into question, and caused it to be abolished in some of the states. In Bingham on Descents, 237, in speaking

of Shelley's Case, the author says: "It may, however, be trusted as a safe rule to follow, in all cases of construction of contracts, conveyances, or wills, that the intention of the parties, manifested by the reading of the whole instrument together in the light of attending circumstances, must control the meaning, and this general rule applies to the rule in Shelley's Case." Section 1920 of the Code limits the disposition of property which suspends the absolute power of controlling the same to the lives of persons then in being and for twenty-one years thereafter. This is in line with the reasons upon which the rule in Shelley's Case is based. It is to prevent the tying up of estates in land so as to withhold them for alienation from long periods of time. If the intention of the donor or devisor is within the provision of this statute or the rule in Shelley's Case, it is not sanctioned by the law and will not be given effect, but, if otherwise, it will. In *Hileman v. Bouslaugh*, 13 Pa. St. 351, in discussing the rule in Shelley's Case, the court says: "A devisor who uses words of limitation in an improper sense may so explain the meaning of them by other words in the context as to exclude his devise from the rule, for it operates only on the intention when it has been ascertained, not on the meaning of words used to express it. The ascertainment is left to the ordinary rules of construction peculiar to wills, but when the intention thus ascertained is found to be within the rule, there is but one way; it admits of no exception." See also, *Slemmer v. Crampton*, 50 Iowa, 302.

Taking this will in all its parts, it seems to us entirely clear that the testator intended to give to his daughter, Emilie, a life estate, and nothing more. The devise is not only expressly limited to her, "for and during her lifetime," but as expressly limits her enjoyment to "the rents, issues and profits and income * . * * for and during the term of her natural life-

time." This intention is emphasized again in the third paragraph, wherein it is provided that if Emilie "shall die after entering upon the enjoyment of said estate for life, as before provided, without leaving any such heirs of her body begotten, as aforesaid," the estate shall go to the heirs of the testators. It cannot be said in the face of these repeated expressions limiting the devise to Emilie to an estate for life that by the devise to "such heirs of her body begotten," it was intended to give her an estate in fee simple. To our minds it is clear that the intention of the testator was to give her the estate for life, and then to her children "of her body begotten," and if she died without leaving a child of "her body begotten," surviving her, an equal half should go to the heirs of each testator. It was surely not intended to enlarge the life estate so plainly and expressly devised to Emilie by the devise to the "heirs of her body begotten." In *Hanna v. Hawes, supra,* two thousand dollars was devised "to be invested in lands for my said daughter, to have the income of the same during her life, and at her death to go to the heirs of her body." This court said: "Conceding the rule in Shelley's Case to be law in this state, it is not applicable, because the testator did not vest the legal estate in Mrs. Little with a limitation over to the heirs of her body." The intention to limit the first estate to one for life is not as apparent as in this case.

The demurrer was properly overruled, and the judgment and decree of the district court is therefore AFFIRMED.